## WALLACE v. GODFREY et al.

### (Circuit Court, N. D. Mississippi, W. D. June, 1890.)

MARRIAGE BETWEEN SLAVES—CHILDREN ENTITLED to INHERIT.

Act Tenn. May 26, 1866, providing that "all free persons of color who were living together as husband and wife in this state, while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may hereafter be acquired, by said parents, to as full an extent as the children of white citizens are now entitled by the existing laws of this state," makes legitimate and capable of inheriting the child of slave parents, whose marriage was void under the restrictions growing out of the institution of slavery, though one of the parents may have died during slavery.

In Equity. On demurrer.

D. C. Standifer, J. T. Lowe, and W. S. Chapman, for complainant.

F. A. Montgomery, Jr., St. John Waddell, Sullivan & Whitfield, and M. A. Montgomery, for respondents.

HILL, J. The questions now presented for decision arise upon the demurrer of Edward Godfrey, R. C. Kyle, James Tyson, and W. J. Kyle, defendants in this cause, to complainant's bill. The bill, in substance, states that, in the year 1851, Sam Stone and Cynthia Ruffin, with the consent of their master, they both then being slaves, were, in the state state of Tennessee, lawfully married; that in the year 1852 the complainant, Candis Wallace, was, as the fruit of said marriage, born, being the legitimate child of said Sam Stone and Cynthia Ruffin, as far as the same could be under the laws of the state of Tennessee, where her parents then lived, and where she was born; that some months after her birth her mother died; that her father, said Sam Stone, ever afterwards, and up to his death, recognized and treated her as his lawful child, as much so as could be done under his condition as a slave, and under the laws of said state; that complainant and her father remained slaves until emancipated by the thirteenth amendment to the constitution of the United States, and continued to reside in said state as citizens thereof until some time

in the year 1867 or 1868, when her father removed to the state of Mississippi, complainant remaining a citizen of Tennessee, where she still resides, and is the wife of ———— Wallace; that on the 26th day of May, 1866, and while complainant and her father were citizens of Tennessee, the legislature of said state passed an act in the following words: "All free persons of color, who were living together as husband and wife in this state while in a state of slavery, are hereby declared to be man and wife, and their children legitimately entitled to an inheritance in any property heretofore acquired, or that may hereafter be acquired, by said parents, to as full an extent as the children of white citizens are now entitled, by the existing laws of this state," (Laws 1865–66, c. 40, § 5;) that, some time after her father removed to Mississippi, he married another woman, by whom he had two children, George and Martha; that some time during the year 1880 her father died intestate in Tunica county, in the state of Mississippi, possessed and the owner in fee of the W. ½ of section 15, in township 6, and range 11 W., now worth $7,500; that her father, the said Sam Stone, left surviving him, as his heirs at law, his three children, the complainant, and said George Stone, and said Martha Stone, the latter having been married to Henry Clay; that her brother, George Stone, and Martha Clay have both since departed this life; that George Stone left neither wife nor child; that Martha Clay left as her heir at law her husband, Henry Clay, and her two minor children, Ida Clay and Davis Clay; that complainant is informed that Edward Godfrey, Jim Tyson, R. C. Kyle, and W. J. Kyle, defendants, claim some title to said lands, or some part of them. The bill prays that the defendants answer the allegations in the bill; that commissioners be appointed to partition the said lands; and that complainant have, by a decree of this court, her interest in said land set off to her. The bill charges that the complainant is the heir at law of her father, Sam Stone; that as such she is entitled to one-third in value of the lands described in the bill, and prays that the same be set off to her as aforesaid, and that, if this cannot be done without impairing its value, the land be sold, and, after the payment of the costs and expenses, the one-third thereof be paid over to her. The demurrers aver, in substance, that the bill on its face shows that complainant was born of slave parents, who were never legally married; that she is therefore an illegitimate child, and incapable of inheriting any part of the land described in the bill; that she is barred by the statute of limitations; that the bill does not set out the interests of the demurrants in the land described in the bill.

The question thus raised, and which has been ably argued by the learned counsel on all sides, is of first impression in this court, and, in some respects, in any other court to which I have been referred. The validity of the marriage between the complainant's parents, and the legitimacy of complainant as their child, must depend upon the statutes of the state of Tennessee, where the marriage took place, and where the parties resided when the act of May 26, 1866, was passed and became a law as construed by the supreme court of that state, and upon the statutes of this state on the subject of descent of real estate of persons dying

intestate. The law of the states regulating the validity of marriage, and the legitimacy of children born of the marriage, is governed by the laws of the state where the marriage takes place and the children are born, and the law of descent by the statutes of the state in which the land is situated. This is the rule in all the states, when not against the public policy of the state.

I have been referred to but two decisions made by the supreme court of Tennessee in reference to the subject of marriage between slaves while they were such, and as to the effect of the act of 1866. The first is the case of *McReynolds* v. *State*, 5 Cold. 18. This was a case in which the defendant was indicted for the crime of bigamy. The defendant while a slave married a woman who was also a slave at the time. They lived together as husband and wife until after the emancipation act, when he abandoned his wife, and married another colored woman. For this marriage he was indicted. It was held by the court in that case that while a slave he was incapable of making a valid contract, and that the marriage was void, and that it was his privilege to treat it as a nullity as soon as he was capable of making a valid contract; yet, if he continued to live with the woman he had married when a slave, after emancipation, it was a ratification of the marriage. A mutual recognition of each other, after the emancipation, as husband and wife, completes the act of matrimony between those who had been married according to the custom of marriage between slaves during the time of slavery. Under this decision, the mother of the complainant having died before the emancipation, the legitimacy as the heir at law of her father could not be maintained.

But this question came before the supreme court again in the case of *Andrews* v. *Page*, 3 Heisk. 653. The facts in that case were as follows: On the 3d day of December, 1857, (the statement in the report by mistake puts it 1867,) Henry Page, a free man of color, bought of the complainant three slaves, said to be his wife and two children, for the sum of $3,200, and took a bill of sale from the complainant, the vendor. Henry paid part of the purchase money, and was to pay the residue in one, two, and three years; and having absconded privately, and left the country to parts unknown, as the bill alleged, an attachment in chancery was issued and levied upon the real estate of Page, to recover the unpaid purchase money. The bill was filed in January, 1861. Henry Page died in October, 1864. No further steps had been taken in the cause until February, 1866, when a decree was rendered in favor of the complainant for the balance due in August, 1866, at which time Dilly Page, the widow of Henry, and his children, filed a petition to reopen the case, which was granted. The widow set up her claim to dower in the lands, and the children set up their claims, as heirs at law, all of which claims were resisted by the complainant. The court examined the case with great care, and Justice NELSON delivered an elaborate opinion, in which it was held that the general doctrine held in the slave states, that the municipal law did not hold as valid marriages between slaves, had not prevailed in the state of Tennessee, and in that particular overruled the case of *McReynolds* v. *State*. The court further held that the power to

validate marriages and legitimate children by the general laws existed in the legislature of the state, and the act of May 26, 1866, legitimating marriages of slaves, was valid, and the children of slave marriages were capable of inheriting by the act of 1866; that the purchase by Henry of his wife gave her an inchoate right of freedom, only requiring the assent of the state to complete it, which her emancipation effected, and that it related back to the time this inchoate right was acquired; that Dilly was entitled to dower in the lands, and that, after the payment of the purchase money due the complainant, the children, as the heirs at law of their father, Henry Page, were entitled to the remainder. The opinion in this case states that "the act of 1866, having been passed to ratify marriages, good during the institution of slavery by the prevailing usage of this state, and to create a right of inheritance conformable to such usage, and the changed condition of the slave, was in furtherance of good morals, and of the best interests of the state, and, where no other rights have intervened, was eminently constitutional and proper."

I understand this decision of the supreme court of Tennessee, and the last one on the subject, to hold: (1) That marriages between slaves in Tennessee, which would have been valid under the common law but for the restrictions growing out of the institution of slavery, were valid marriages, as far as the condition of the parties as slaves would permit, and that the children born of such marriages were not bastards, but legitimate, and capable of inheriting the property of their parents, as far as that could be done under the law. (2) That the purpose of the act of 1866 and its legal effect was to give to such marriages full effect so far as might be without interfering with vested rights; and to give to the children, born of such marriages, while slaves, all the inheritable rights to which they would have been entitled had their parents been legally married white persons. Henry Page died in 1864, before the act of 1866 was passed, though their master was their father, and a portion of them must have been born while Andrews was their owner. Notwithstanding this, they were declared, under the provisions of the act of 1866, to be the heirs at law of their father, and entitled to an inheritance in his estate. The legislature, at the time this act of 1866 was passed, passed another act, directing that all administrators and other persons having money in their hands, to which children of parents married when slaves, and the children born in slavery, aside from slavery, would have been entitled, shall pay the same over to such children; which shows the intention of the legislature to have been to place such marriages and children in the position of lawfully married persons, and their children as born in lawful wedlock, and entitled to inherit the estate of their parents. Under this construction of the act of 1866, and its effect, I am of opinion that as to slave parents, when one of them died during slavery, the meaning of the act is that such parents shall be held as having been lawfully married, as husband and wife, and their children born of such marriages their legitimate children, and entitled to an inheritance of their parents' estate, when they may have died intestate.

Applying these rules to the case now under consideration, I am brought to the conclusion that the complainant, Candis Wallace, must be held as having been born in wedlock, as the child of her father and mother, and entitled to inherit an undivided portion of the lands of which her father died seised and possessed, with his other lawful heirs. The statute of this state (section 1271, Code 1880) provides that when any person shall die seised of any estate of inheritance in lands, tenements, and hereditaments, not devised, the same shall descend to his or her children, and their descendants, in equal parts, the children of the deceased child or grandchild to take the share of the deceased parent in equal parts among them; and there shall be no distinction between the kindred of the whole and half blood, except that the kindred of the whole blood, in equal degree, shall be preferred to the kindred of the half blood in the same degree. In this case the complainant and her half brother and sister were all the children of their father, Sam Stone, so that there is no distinction between them or their descendants, to whom their rights have descended. According to the statements of the bill, upon the death of the father each of his three children was entitled to take a one-third interest in the land. Upon the death of the brother, his interest descended to his sister, which gave her a two-thirds interest, and upon her death this interest descended to her husband and her two children in equal parts. The bill alleges that defendants the said Edward Godfrey, R. C. Kyle, W. J. Kyle, and Jim Tyson claim some interest in the land descended to George Stone, but in what way is not stated. It is urged upon the part of these last defendants that this court, in this proceeding, has no jurisdiction to adjudicate and pass upon their rights. This depends upon the character of the title under which they claim. If they claim as heirs at law of either of the parties, or as grantees of either of them, then the court, under section 2576 of the Code of 1880, has jurisdiction to hear and determine the question of title, and any other question necessary to be determined to settle all the rights and equities between the parties in reference to the lands of which partition or sale is prayed for in the bill; but, if the title is claimed under an adverse source to the complainant's title, and the other parties derive or claim title from the same source with the complainant, then the court has not jurisdiction to determine the validity of such adverse title. But, as the character of the source of title claimed by these defendants does not appear in the bill, the demurrer will be overruled, with leave to set up the same defense in the answer, and 60 days will be allowed them in which to answer as of the present term.